UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DERRICK PURDIE,

                              Plaintiff,

         -against-

SCOTT BROWN and DONALD McGEE,
*individually*,

                              Defendants.

14 Civ. 8490 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Derrick Purdie ("Plaintiff") commenced this action by complaint filed October 23, 2014, against defendants Scott Brown and Donald McGee (collectively, "Defendants"). Plaintiff brings the action pursuant to 42 U.S.C. § 1983, alleging that Defendants deprived Plaintiff of his right to equal protection of law as guaranteed by the Fourteenth Amendment to the United States Constitution. More specifically, Plaintiff asserts a selective enforcement claim, based on the Defendants' actions in causing Plaintiff to be arrested and prosecuted.

Defendants now move to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

All facts are taken from the Complaint and are accepted as true for the purposes of this motion. Plaintiff is an African-American police officer who started to work for the Village of Tarrytown Police Department in 2003. (Compl. ¶ 6, ECF No. 1.) Plaintiff is the only African-American police officer in the department. (*Id.* ¶ 8.) Defendant Scott Brown is the Chief of

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/2/2015

Police of the Tarrytown Police Department, and defendant Donald McGee is the Lieutenant. (*Id.* ¶¶ 2-3.)

On April 29, 2014, Plaintiff met with Brown and McGee in Brown's office. (*Id.* ¶¶ 9-10.) Defendants explained to Plaintiff that an investigation revealed Plaintiff was identified as the person who previously tampered with McGee's office door. (*Id.* ¶ 11.) Plaintiff was given the option to immediately resign or be arrested for criminal mischief. (*Id.* ¶ 12.) Though Plaintiff requested legal representation, defendant Brown advised Plaintiff that legal representation was not necessary. (*Id.* ¶¶ 13-14.) Plaintiff also claims that Brown told him that if he did not resign, he would not only be arrested for felony criminal mischief but also would be shamed in the local media. (*Id.* ¶ 16.) When Plaintiff refused to resign, defendant Brown instructed two Tarrytown detectives to arrest Plaintiff, and McGee searched Plaintiff and advised him that he was suspended without pay for 30 days. (*Id.* ¶¶ 22-23.)

Plaintiff alleges that he was held in the booking area for five to six hours and was later escorted by a detective and sergeant to his home to seize his off-duty weapons. (*Id.* ¶¶ 25-26.) Plaintiff claims that Defendants instructed the sergeant to humiliate Plaintiff by placing him in a marked car and handcuffing him while traveling to his home; the sergeant did not take such actions. (*Id.* ¶ 27.) Defendants issued a press release including Plaintiff's photograph and explaining that he had been charged with felony criminal mischief. (*Id.* ¶ 30.) The felony criminal mischief charge was rejected, and Plaintiff was arraigned on two misdemeanor charges, criminal tampering, and obstructing governmental administration. (*Id.* ¶ 31.)

Plaintiff alleges that his arrest, prosecution, and humiliation were all the product of racial discrimination. (*Id.* ¶ 33.) To support this assertion, Plaintiff explains that other Caucasian officers have played pranks on McGee without any repercussions. (*Id.* ¶ 35.) Plaintiff also

alleges a number of instances in which Caucasian officers committed offenses for which they were not arrested or prosecuted, including:

- In February and March 2014, a white officer claimed he could not work because he was injured while effecting an arrest, yet the same officer was observed by McGee to be shoveling snow while out for his purported injury;
- During the Super Bowl, a white officer spent the better part of his shift watching the game at a friend's house, and defendants were notified by a neighbor's complaint that his police vehicle was blocking their driveway;
- A white officer was found peeping into the rooms of guests at a local hotel;
- A white officer was involved in a drunken brawl while off-duty and defendants made sure that he did not face any adverse consequences for his actions;
- A white officer was not suspended either during or after he was charged with DWI in a neighboring jurisdiction; and
- A white officer was permitted to resign rather than face any disciplinary action when he was charged with possessing child pornography, for which he was convicted.

(*Id.* ¶ 37.) In the 11 years that Plaintiff worked with Tarrytown Police Department, he cannot recall any Caucasian officer ever being suspended or criminally charged. (*Id.* ¶ 38.) Plaintiff further alleges that Defendants caused another African-American police officer to be arrested on harassment charges that were later dismissed as unfounded. (*Id.* ¶ 39.)  On this basis, Plaintiff concludes that Defendants caused him to be arrested and criminally charged because of his race. (*Id.* ¶ 40.)

## STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court must thus "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[ ]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662) (internal quotation marks omitted). A plaintiff must provide "more than labels and conclusions" to show he is entitled to relief. *Twombly*, 550 U.S. at 555.

## DISCUSSION

### I.     Consideration of Exhibit Submitted by Defendants on the Instant Motion

As an initial matter, the Court must decide whether it can consider and/or take judicial notice of the police report submitted by Defendants as Exhibit D. On a motion to dismiss, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see Manley v. Utzinger*, No. 10 Civ. 2210 (LTS)(HBP), 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit."). "For a document to be considered integral to a complaint, a plaintiff must 'rel[y] on the terms and effect of [the] document in drafting the complaint ...; mere notice or possession is not enough.'" *Bejaoui v. City of New York*, No. 13-CV-5667 NGG RML, 2015 WL 1529633, at *5 (E.D.N.Y. Mar. 31, 2015) (citing *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 156 (2d Cir. 2006))

(alterations and emphasis in original) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (courts may consider an extrinsic document when the complaint "relies heavily upon its terms and effect")).

The Court may also consider "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman*, 568 F. App'x at 43. Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "Put another way, facts appropriate for judicial notice must 'meet either [one of the] test[s] of indisputability contained in Rule 201(b): they [should be] common knowledge, [or] ... derived from an unimpeachable source.'" *Alvarez v. Cnty. of Orange, N.Y.*, 95 F. Supp. 3d 385, 2015 WL 1332347, at *11 (S.D.N.Y. 2015) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)). "If a court takes judicial notice of documents pertinent to a motion to dismiss, it need not convert the motion to dismiss into a motion for summary judgment." *Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013); *see Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000); *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).

Because these documents do not appear, from the allegations in the pleadings, to be integral to the Complaint and are not incorporated into the Complaint by reference or attached to it, the Court will not consider the extrinsic evidence contained in the police report on the instant motion. The police report is clearly not a "legal document containing obligations upon which [Plaintiff's] complaint stands or falls." *Global Network*, 458 F.3d at 157. Moreover, Plaintiff submits to the Court the Misdemeanor Criminal Informations prepared by Lieutenant McGee.

While this document is also extrinsic evidence, the substance of which will not be considered by this Court on a motion to dismiss, the document alone is sufficient to provide all of the information relied on by Plaintiff in drafting the Complaint, demonstrating that the police report was not integral or essential to the Complaint. Therefore, in drafting the Complaint, Plaintiff did not need to "rely on the terms and effect" of the police report. *See Chambers,* 282 F.3d at 153. *See also Williams v. City of New York*, No. 14-CV-5123 NRB, 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015) *reconsideration denied sub nom. Williams v. The City of New York*, No. 14 CIV. 5123 NRB, 2015 WL 5190586 (S.D.N.Y. Sept. 3, 2015) ("A document is not "integral" simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint.").

Moreover, the Court will not take judicial notice of the police report. Defendants have not explained how the police report contains facts that are of common knowledge or that are derived from an unimpeachable source. *See* Fed. R. Evid. 201(b)(2). It is worth noting that after heavy deliberation, *Alvarez* declined to take judicial notice of a police incident report, citing a number of reasons, including that "caution must be used in determining that a fact is beyond controversy under Rule 201(b), [] district courts appear to be unsettled on whether judicial notice of materials such as these is appropriate at the motion to dismiss stage, the [] Second Circuit [has not weighed in] on the issue, and Defendants fail[ed] to explain how the source of these documents is unimpeachable." *Alvarez,* 2015 WL 1332347, at *11 (internal quotation marks and citations omitted). For largely identical reasons, the Court does not find the police report to be a public record of which it can take judicial notice. Thus, the police report will not be considered on this motion.

II.     **Equal Protection Claim**

Plaintiff's theory of liability under § 1983 is premised on the Defendants' alleged selective enforcement of criminal measures taken against Plaintiff but not against similarly situated Caucasian police officers, in violation of the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal citations and quotation marks omitted). A plaintiff may plead intentional discrimination in violation of the Equal Protection Clause in a number of ways, including based on theories of selective enforcement and a "class-of-one." *See Witt v. Vill. of Mamaroneck*, No. 12 Cv. 8778 (ER), 2015 WL 1427206, at *4 (S.D.N.Y. Mar. 27, 2015). To succeed on a theory of selective enforcement, a plaintiff must prove that: "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).

Therefore, in order to prevail on its selective enforcement claim, Plaintiff must show that similarly situated individuals were treated differently. There is, however, "disagreement within the Second Circuit regarding the degree of similarity that a plaintiff must show in order to adequately allege an equal protection claim under the selective enforcement theory." *Witt*, 2015 WL 1427206 at *5 (internal citation omitted). *See also Missere v. Gross,* 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011).  Some courts in this Circuit have applied the "class-of-one" similarly situated standard to selective enforcement claims, requiring a plaintiff to show that: "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a

7

comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011). Other courts have applied a "slightly less stringent" standard to selective enforcement claims, requiring a plaintiff to "show that the comparators are 'similarly situated in all material respects.'" *Witt*, 2015 WL 1427206 at *5 (citing *Mosdos Chofetz Chaim*, 815 F. Supp. 2d at 696). In applying the less stringent standard to a selective enforcement claim, the court in *Mosdos Chofetz Chaim* explained:

> An extremely high level of similarity is required in the "class of one" context because plaintiffs asserting those claims are attempting to prove that the government's treatment was arbitrary and irrational.  However, in the present case, Plaintiffs are not alleging that Defendants sued them . . . to block the . . . project for no reason at all; instead, they have specifically and repeatedly alleged that Defendants have targeted their project because [of their religion]. . . . Accordingly, the Court believes it is appropriate to utilize a less stringent standard than would apply if Plaintiffs were claiming there was simply no rational reason for the disparate treatment.

815 F. Supp. 2d at 696-97.  For the same reasons, the Court follows *Mosdos Chofetz Chaim* and other cases in this Circuit that have applied a less stringent standard to selective enforcement claims. *See*, *e.g.*, *Walker v. City of New York*, No. 05 Cv. 1283 (RER), 2010 WL 5186779, at *7 (E.D.N.Y. Dec. 15, 2010); *Abel v. Morabito*, No. 04 Cv. 07284 (PGG), 2009 WL 321007, at *4 (S.D.N.Y. Feb. 10, 2009). Therefore, Plaintiff "must identify comparators whom a 'prudent person would think . . . [were] roughly equivalent.'" *Abel*, 2009 WL 321007 at *5 (quoting *Estate of Morris v. Dapolito*, 297 F. Supp. 2d 680, 686 (S.D.N.Y. 2004)) (alterations in original).

"While a plaintiff is not required to proffer evidence of similarly situated [comparators] at the motion to dismiss stage, the court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the

comparators are similarly situated." *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013) (citing *Mosdos Chofetz Chaim*, 815 F. Supp. 2d at 697-98) (internal quotation marks omitted).

Plaintiff claims that Defendants caused him to be arrested and criminally prosecuted based on his race. As Plaintiff notes, to prevail on a claim of Equal Protection, Plaintiff must prove Defendants failed to *arrest* or *prosecute* similarly situated non-African-American police officers. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, "Pl.'s Memo", p. 7.) Because Plaintiff waived all claims with regards to his suspension, he must allege other instances of misconduct *warranting arrest*.[1] Plaintiff alleges the following instances of misconduct:[2]

1. In February and March 2014, a white officer claimed he could not work because he was injured while effecting an arrest, yet the same officer was observed by McGee to be shoveling snow while out for his purported injury;
2. During the Super Bowl, a white officer spent the better part of his shift watching the game at a friend's house, and defendants were notified by a neighbor's complaint that his police vehicle was blocking their driveway;
3. A white officer was found peeping into the rooms of guests at a local hotel;
4. A white officer was involved in a drunken brawl while off-duty and defendants made sure that he did not face any adverse consequences for his actions;
5. A white officer was not suspended either during or after he was charged with DWI in a neighboring jurisdiction; and
6. A white officer was permitted to resign rather than face any disciplinary action when he was charged with possessing child pornography, for which he was convicted.

(Complaint, ¶ 37.)

With regard to allegations 5 and 6, Plaintiff has not sufficiently pleaded similarity to sustain a selective enforcement claim. These allegations are based on lack of disciplinary

---

[1] Plaintiff acknowledges the release of all claims with regards to his suspension. (*See* Pl.'s Memo, p.7.)

[2] Plaintiff additionally alleges that other Caucasian officers have played pranks on McGee, including placing fruit peels and salt under his door, among other things. (Compl. ¶ 35.) The Court does not find that any of this conduct could plausibly lead to an arrest or criminal prosecution and therefore does not consider the actors to be sufficient comparators.

measures within the police department, rather than failures to arrest or prosecute. In fact, the officers in both allegations were criminally charged. Thus, these allegations are not sufficiently similar to survive a motion to dismiss. Similarly, regarding allegation 2, Plaintiff claims that the white officer could be arrested due to his personal use of time while officially on duty. Plaintiff has not cited any case in which a police officer or other government employee was arrested or prosecuted for theft of services, larceny, or any crime in a comparable circumstance. (*See* Pl.'s Memo, p. 9.) Though Plaintiff alleges that such cases "arise with some frequency," the Court is not convinced that this claim is sufficient to "nudge ... across the line from conceivable to plausible to proceed" past a motion to dismiss. *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted)).

The remaining allegations, however, are sufficient to survive dismissal. Allegations 1, 3, and 4 assert conduct that could plausibly lead to criminal charges.  Defendants assert, with regards to allegations 3 and 4, that they did not or may not have had jurisdiction over the offenders and therefore could not pursue criminal prosecution. This fact, however, cannot be considered by the Court on a motion to dismiss, where the Court may only consider the pleadings. Therefore, the factual allegations contained in Defendants' motion to dismiss cannot be given any weight, and the jurisdiction allegation will not be considered on this motion. *See Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir. 1989) ("On a motion to dismiss, the district court must limit itself to a consideration of the facts alleged on the face of the complaint ... and to any documents attached as exhibits or incorporated by reference.") (internal citations omitted). In addition, with the limited facts in the pleading for the Court to consider, all reasonable factual inferences must be drawn in favor of the Plaintiff. *Leeds,* 85 F.3d at 53. Thus, Plaintiff has

10

provided in the Complaint comparators that committed criminal conduct and were not arrested or prosecuted, which is sufficient to survive a motion to dismiss.

Turning to the second prong of the selective enforcement analysis, "a plaintiff advancing a selective enforcement claim must demonstrate that a discriminatory purpose was a motivating factor in the government decision. Discriminatory purpose implies that the decisionmaker selected or reaffirmed a particular course of action at least in part because of[,] not merely in spite of[,] its adverse effects upon an identifiable group." *Adler v. Kent Village Housing Co.*, 123 F. Supp. 2d 91, 98 (E.D.N.Y. 2000) (internal citations and quotation marks omitted). Here, accepting Plaintiff's well-pleaded allegations as true, and drawing all reasonable inferences therefrom, the Complaint contains statements and conduct that, if proven true at trial, could give rise to an inference of discrimination. Defendants contend that Plaintiff's complaint merely contains conclusory allegations that Plaintiff was arrested because of his race. (Memorandum of Law in Support of Defendants' Motion to Dismiss, "Def.'s Memo," p. 16.) The cases cited in support of this assertion, however, contained pleadings that were significantly more deficient than the Complaint in the instant case.[3] Plaintiff alleged the arrests of two African-American police officers; humiliating treatment following his arrest; and a number of non-African-American comparators who were not arrested or criminally prosecuted. Taking these allegations as true, the Court finds that Plaintiff has alleged a cognizable equal protection violation.

---

[3] *Liang v. City of New York*, No. 10-CV-3089 ENV VVP, 2013 WL 5366394, at *11 (E.D.N.Y. Sept. 24, 2013) (awarding dismissal where Plaintiff only alleged one potential comparator and no additional facts to suggest discrimination); *John Gil Const., Inc. v. Riverso*, 99 F. Supp. 2d 345, 353 (S.D.N.Y. 2000) aff'd, 7 F. App'x 134 (2d Cir. 2001) (dismissing the complaint for plaintiff's failure to include any information with respect to the race or ethnicity of other alleged similarly situated contractors, which may have given rise to an inference of discrimination); *Gordon v. City of New York*, No. 10-CV-5148 CBA LB, 2012 WL 1068023, at *9 (E.D.N.Y. Mar. 29, 2012) ("[Plaintiff] hasn't alleged any disparity in treatment between himself and another person, and his papers lack any facts related to his race beyond his identification of himself as a minority.").

11

### III.    Qualified Immunity

Defendants claim that the Chief of Police and Lieutenant are entitled to qualified immunity. "In this Circuit, a defendant may [raise qualified immunity in a pre-answer motion to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment." *Sledge v. Bernstein,* No. 11 Cv. 7450 (PKC) (HBP), 2012 WL 4761582, at *4 (S.D.N.Y. Aug. 2, 2012); *see also McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004) (a defense of qualified immunity in a motion to dismiss can only be sustained if plaintiff cannot state any facts that would prevent the application of qualified immunity). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818-19.[4]  It is within the Court's discretion to determine the order in which the two prongs are analyzed. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Having already decided that Plaintiff sufficiently alleges a violation of constitutional rights, the Court turns to the second prong of the test.  It is without question that the rights at issue, including the right not to be discriminated against on the basis of race, were clearly established at the time of the alleged conduct.  Accordingly, the Defendants are not entitled to qualified immunity.

---

[4] Defendants assert that "[a] police officer is entitled to qualified immunity if there is 'arguable probable cause, which exists if it was objectively reasonable for the officer to believe that there was probable cause, or if officers of reasonable competence could disagree as to the existence of probable cause.' *Morales v. City of New York*, 209 F. App'x. 75, 76 (2d Cir. 2006)." (Def.'s Memo, p. 19.) This standard applies most often in the false arrest context, and Defendants have not cited any case suggesting that the same standard should apply in a selective enforcement context. Without relevant authority, this Court will not extend application of the probable cause standard to a selective enforcement case.

IV.    **Punitive Damages**

      Although Plaintiff submitted opposition papers to the instant motion, Defendants point out that Plaintiff failed to dispute Defendants' argument to strike punitive damages. Defendants request that the Court deem these allegations abandoned and dismiss the related claims. The Court agrees, as "[P]laintiff's failure to respond to contentions raised in a motion to dismiss . . . constitutes an abandonment of those claims." *Youmans v. Schriro*, No. 12 Cv. 3690 (PAE)(JCF), 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) (citing *M.M. ex rel. J.M. v. New York City Department of Education,* No. 09 Cv. 5236, 2010 WL 2985477, *6 (S.D.N.Y. July 27, 2010) (collecting cases); *Brandon v. City of New York,* 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (same)). Because Plaintiff failed to address Defendants' argument to strike punitive damages, the Court considers the request for punitive damages abandoned. *See Diba Family Ltd. P'ship v. Ross,* No. 13 CIV. 06384 LGS, 2014 WL 5438068, at *3 (S.D.N.Y. Oct. 27, 2014) aff'd, 606 F. App'x 628 (2d Cir. 2015) (dismissing Plaintiffs' request for punitive damages because Plaintiffs did not mention punitive damages in their opposition brief).

## CONCLUSION

      For the foregoing reasons, Defendants' motion to dismiss is GRANTED with respect to Plaintiff's request for punitive damages and DENIED with respect to the equal protection and qualified immunity claims. The Court respectfully directs the Clerk to terminate the motion at ECF No. 16. Defendants are directed to file an answer to the Complaint within 30 days of the date of this Order. The parties are further directed to appear for an initial pre-trial conference on December 10, 2015, at 10:00 a.m. Parties should prepare and submit a proposed case management plan and scheduling order in advance of this conference.

Dated:    November 3, 2015                          SO ORDERED:
          White Plains, New York

                                        _____
                                              NELSON S. ROMÁN
                                          United States District Judge